# WHITMAN vs. ABERNATHY.

[BILL IN EQUITY BY FEME COVERT, FOR RECOVERY OF SLAVES BELONGING TO SEPARATE ESTATE, AND REMOVAL OF HUSBAND AS TRUSTEE.]

1. *Conveyance of wife's separate estate.*—A bill of sale for a slave belonging to the wife's separate estate, executed by husband and wife, attested by only one witness, and not shown to be under seal, is not sufficient, under the provisions either of the Code or of the act of 1850, to pass the title of the wife when a minor.

2. *When wife may come into equity.*—A married woman, having a separate estate created by law, may come into equity to have her husband removed from the trusteeship of her estate, and to recover property which he has disposed of without authority.

3. *Multifariousness.*—A bill filed by a married woman, seeking to recover property belonging to her separate estate, which her husband had sold without authority, and to remove him from the trusteeship of her estate, is not multifarious.

4. *Rents and profits of wife's separate estate.*—When a married woman files a bill for the recovery of property belonging to her separate estate under the act of 1850, which has been sold by her husband without authority, and for the removal of her husband as her trustee, she is not entitled to a decree for the hire accruing before the order for the husband's removal as trustee.

5. *Purchaser's liability for loss of property.*—Under such a bill, the purchaser from the husband, or a sub-purchaser, is liable to the wife for the value of a slave who died in his possession pending the suit.

APPEAL from the Chancery Court of Lowndes. Heard before the Hon. WADE KEYES.

THIS bill was filed by Mrs. Isabella Abernathy, suing by her next friend, against Meredith B. Abernathy, her husband, and James K. Whitman; and sought to recover certain slaves, which the complainant claimed as a part of her separate estate, and which were in the possession of the defendant Whitman, and to have her husband removed from the trusteeship of her separate estate. The facts of the case, as disclosed by the pleadings and proof, are these: The complainant's marriage with her said husband took place on the 1st April, 1852; she being at that time a minor, and possessed of several slaves, which she inherited from the estate of her deceased father, and which were in the hands of her guardian. These slaves, soon after the said marriage, went into the possession of her husband, who, in January or February, 1853, (the precise time is not shown,) sold them to one George C. Tillman, and executed to him a bill of sale for them, in which Mrs. Abernathy joined, and which was attested by one witness; and Tillman afterwards sold them to Whitman. One of said negroes died in Whitman's possession, after the commencement of this suit, Abernathy, the complainant's husband, after squandering most of her property, became a fugitive from justice, traveled from place to place under an assumed name, and abandoned her. The defendant Whitman answered the bill; denying its allegations on information and belief; insisting that the sale to Tillman was valid, and that he himself was entitled to protection as an innocent purchaser for value; and demurring to the bill for want of equity, for multifariousness, and for misjoinder of defendants. Decrees *pro confesso* were entered against Abernathy and Tillman. On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainant; removing her husband from the office of trustee, and enjoining him from interfering with her property; ordering Whitman to deliver to her all the slaves which remained in his possession, and charging him with the value of the

one which had died; and ordering a reference to the master, to ascertain the hire of the slaves from the filing of the original bill. The decree of the chancellor is now assigned as error.

THOS. WILLIAMS, for the appellant, made these points:

1. The bill is without equity, because the complainant had an adequate remedy at law.—Code, § 2131; Gerald and Wife v. McKenzie, 27 Ala. 166; Pickens and Wife v. Oliver, 29 Ala. 528.

2. The conveyance of the slaves by husband and wife, if not in accordance with the requisitions of the statute, was sufficient to pass the title as against the wife, under the act of 1850, or under the Code. The deed is lost, and the proof does not show the exact time when it was executed. Construing the allegation of the bill, that the sale took place "early in January, 1853," most strongly against the complainant, she must be held to aver that the conveyance is governed by the act of 1850, which was not superseded by the Code until the 17th January, 1853. Under that statute, husband and wife may sell the property of the wife, and convey it by their "joint deed;" and the deed is required to be "executed, proved and recorded in accordance with the requirements of the laws now in force regulating conveyances of real estate." This conveyance was attested by but one witness, and was not proved and recorded. But the statute does not declare a conveyance void, in favor of the grantors, on account of the failure to comply with these requisitions: its object evidently was to give notice to strangers, and not to enable the parties themselves to avoid their deliberate act on account of a mere informality in the attestation or registration. If the Code applies to the case, it is supposed that the conveyance is invalid because not attested by two witnesses. But it is to be observed, that the Code does not declare the conveyance void, if attested by but one witness, nor does it say that the wife's property shall not be disposed of in any other way than by deed attested by two witnesses. The statute provides one valid mode of conveyance, but does not prohibit others; nor is there

any thing in it to prevent the application of the principle already cited, respecting the validity of deeds *inter partes*, notwithstanding the informality of their execution.

3. The infancy of the complainant, at the time of the sale, is not available to her in avoidance of the deed. Neither the act of 1850, nor the Code, in authorizing conveyances of the wife's property by deed of husband and wife, contains any exception as to infants. The statutes apply to a class—to married women generally—and an exception not warranted by their terms cannot be engrafted upon them. It is to be presumed, that the legislature supposed the husband would exercise a controlling influence, which would be a sufficient protection against any indiscretion on the part of the wife if under age. Aside from the statutes, at common law, the contract of an infant was voidable only, and not absolutely void; and he was required to disaffirm it within a reasonable time after attaining his majority.—Manning v. Johnson, 26 Ala. 457; 7 Cowen, 173; Thomas v. Boyd, 13 Ala. 419; Lawson v. Lovejoy, 8 Greenl. 405; 1 Dana, 45; 8 Cowen, 84; 8 Texas, 417; 2 Stewart, 498; Smith v. Evans, 5 Humph. 70; Weaver v. Jones, 24 Ala. 420; 3 Har. & McH. 128; 9 Vesey, 478; 3 Edw. Ch. 222; 2 Barbour, 586; 8 Geo. 341; 6 B. Monroe, 40; 11 B. Monroe, 113; 11 Paige, 107; 2 Rich. Eq. 120; 1 Swan, (Tenn.) 437; 9 B. Monroe, 454; 3 Sandf. Ch. 431; 15 Mass. 359. The authorities above cited show that the complainant, if she has not waived her right to avoid the contract on account of her infancy, certainly does not place herself in a position to obtain equitable relief against it.

4. There is no proof of fraud, coercion, or inadequacy of consideration in the sale. It appears to have been the complainant's voluntary act, and she received the full value of the property in exchange. Whitman is entitled to protection, as an innocent purchaser for valuable consideration without notice.—Anderson v. Roberts, 18 Johns. 515; 3 Edw. Ch. 222; 2 Rich. Eq. 120; Jarrard v. Saunders, 2 Vesey, 457; 1 Story's Eq. §§ 64, 108, 154, 165, 381, 409, 416, 434–36.

5. The complainant was certainly not entitled to a

decree for the hire of slaves from the filing of the bill.. Until the husband was removed from the office of trustee, he was entitled to the rents, income and profits of the wife's separate estate.

6. Whitman is not liable for the value of the slave who died in his possession. He does not occupy the position of a wrongdoer, and cannot be charged as for a tortious conversion.

WATTS, JUDGE & JACKSON, and J. F. CLEMENTS, *contra*, contended,—

1. That the bill of sale did not pass the complainant's title to the slaves, because it did not conform to the requisitions of the statute, whether tested by the act of 1850 or by the Code; and that the statute was restrictive of the right of disposition. To this point they cited the following cases: Calhoun v. Calhoun, 2 Strob. Eq. 231; Wylly v. Collins, 9 Geo. 237; 12 Geo. 195; 4 Texas, 65; 5 Texas, 152; Johnston v. Jones, 12 B. Monroe, 326; 8 Leigh, 20–27: Boykin v. Rain, 28 Ala. 332.

2. That the complainant's infancy was, of itself, a sufficient reason for setting aside the sale.—Manning v. Johnson, 26 Ala. 446; 5 Johns. Ch. 464; 3 Paige, 117; 2 Litt. 157; 2 Rich. 148; 26 Miss. 352; 7 Dana, 506; 5 Sm. & Mar. 216; 9 N. H. 444.

3. That the question of innocent purchaser or not did not arise, and that Whitman was chargeable with the notice which Tillman had.—Garrison v. Fisher, 26 Miss. Rep. 352.

4. That the bill contained equity.—Bridges & Co. v. Phillips, 25 Ala. 136; Cole v. Varner, 31 Ala. ——; Waldron, Isley & Co. v. Simmons, 28 Ala. 629.

5. That the complainant was entitled to a decree for the hire of the slaves from the filing of the bill; that the wrongful act of the husband, on which the complainant founded her claim to relief, deprived him of the right to the rents and profits of her separate estate accruing from that time; that the complainant's right was perfect at the filing of the bill, otherwise she could have obtained no relief at all; and that the husband could not claim the

rents and profits accruing after the filing of the bill, which sought to remove him from the office of trustee.

STONE, J.—It is not rendered necessary, by anything in this record, that we should determine whether a married woman who is a minor, and who has a separate estate created by law, can unite with her husband in a joint deed, and thus convey a valid title to her property. Neither is it necessary to determine whether the failure to prove and record such deed, "in accordance with the requirements of the laws now in force regulating conveyances of real estate," invalidates such title. Nor do we now determine whether an adult married woman, having a separate estate created by law, can convey such estate in any other manner than that provided by the act of 1850, § 5, and the Code, § 1984.

The conveyance relied on this case, was executed by Mrs. Abernathy when she was a minor. It is not clearly shown whether the bill of sale was executed before or after January 17, 1853, the time when the Code went into operation. The testimony of Miss Tilman leads us to the conclusion, that it was before the 17th January, 1853, and hence must be governed by the act of 1850.—See Durden and Wife v. McWilliams & Smith, 31 Ala. 438. Whether governed by the act of 1850 or by the Code, the conveyance in this case would be alike invalid. However the law in regard to adult married women may be, we are satisfied that minors can only make a binding conveyance of their separate property, if indeed they can make such binding conveyance, by conforming substantially to the requirements of the law.

The act of 1850 empowers husband and wife to convey away her separate property, by their joint *deed.*—Pamph. Acts, 64. There is neither an averment nor proof in this case that the conveyance was by deed. The Code (§ 1984) permits husband and wife to convey the property of the wife, jointly, by instrument of writing, attested by *two* witnesses. The bill of sale in this case had but one witness.

[2–3.] The objection that the complainant in this case

had an adequate remedy at law, and that her bill is multifarious, cannot be sustained. If she had sued at law, under section 2131 of the Code, the property, when recovered, would have gone into the control and possession of her husband, as her trustee, who would have been entitled to the rents, income and profits. To give her adequate relief, it was necessary to have her husband and faithless trustee removed. This rendered a resort to chancery necessary, and proves the propriety of joining Mr. Abernathy as a party defendant, and also proves the propriety of seeking and obtaining relief against each defendant.

[4.] In one particular, the decree of the chancellor must be reversed. The complainant has no claim for the hire and profit of the labor of the slaves which accrued before the decree removing her husband from the trusteeship of her property.—Act of 1850, § 4. Her claim for maintenance pending the litigation is not presented by this record. It is not necessary in this case to announce, nor do we announce, what would be our opinion on the right of the wife to recover hire, if in this case the chancellor had, pending the suit, enjoined Mr. Abernathy from intermeddling with the property, under section 1996 of the Code. The bill being filed after the Code went into operation, the rights of Mrs. Abernathy, in this connection, are probably governed by the Code.—§ 1997; Durden and Wife v. McWilliams & Smith, 31 Ala. 438. No such order was made in this case; and, of course, the question does not arise. No injunction having issued against the husband, enjoining him from intermeddling with the estate, her right to the hire depends on the order removing him as trustee, under sections 1994 and 1995 of the Code. The complainant, having herself no right to the hire or profits of the labor of the slaves, cannot recover the same, although Whitman may have had no right to them. .

[5.] We hold there was no error in ordering the defendant to pay for the slave Scott, who died pending the litigation. This right rests on the following principle: Although Mr. Abernathy, up to the time of his removal, was the

trustee of Mrs. Abernathy's separate estate, and as such entitled to the rents, income and profits of the same without liability to account therefor; yet, as such trustee, he had no authority to sell the trust property. The sale made by him was a breach of the trust, and conferred no right on Mr. Whitman to possess and enjoy the property. Having no right to the property, he is accountable for injury or loss of the property in his hands, as any other tortious or wrongful holder would be. Unlike the question of hire, Mrs. Abernathy's right to the *corpus* of the property was all the time complete; and hence her right to recover for the slave which died in Whitman's hands.

The decree of the chancellor, so far as it directs an account of the hire of the slaves from the filing of the bill, is reversed. In all other respects it is affirmed. Let the costs of the appeal be paid by complainant's next friend.